


# UNITED STATES BANKRUPTCY COURT

# CENTRAL DISTRICT OF CALIFORNIA

In re:

**S&B SURGERY CENTER, INC.,**
dba S&B Surgery Center, II
                                    Debtor.

Case No.: LA09-19825SB

Chapter 11

**OPINION REQUIRING CREDITORS'
COMMITTEE TO ESTABLISH WEBSITE
FOR CREDITOR INFORMATION**

Date:   July 28, 2009
Time:   2:00 p.m.
Ctrm:   1575
Floor:  15th

## I. Introduction

This case raises the issue of what a chapter 11 committee of unsecured creditors must do to meet its statutory obligation under § 1102(b)(3)[1] to provide access to information for unsecured creditors. The court holds that, under the facts of this case, the committee must establish and maintain an internet website to provide non-confidential information for unsecured creditors regarding the chapter 11 case.[2]

## II. Relevant Facts

S & B Surgery Center, Inc. ("S&B"), a chapter 11 debtor in possession, operates an out-patient surgery center in Century City (a district in the western part of Los Angeles). S&B has approximately 70 unsecured priority prepetition claimants (mostly wage claimants), and some 150 general unsecured creditors.

---

[1] Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C.A. §§ 101-1532 (West 2008) and to the Federal Rules of Bankruptcy Procedure, Rules 1001-9036.

[2] While such a website may also be used to provide confidential information with password protection to creditors who have signed an appropriate confidentiality agreement, this issue has not been raised in this case.

The total of unsecured prepetition claims exceeds $36 million. S&B anticipates confirming a reorganization plan that will permit it to continue in business.[3]

To fulfill its § 1102(b)(3)(A) duties to unsecured creditors, the committee has proposed that it establish a call-in telephone number through which creditors may request information and provide comments regarding the case, and that the committee's counsel be prepared to respond as appropriate to such calls.

The committee requests that it be excused from providing a website for making information available, because it projects that the cost of establishing and maintaining such a website would range from $500 to $3,000 per month. The committee argues that such a cost is excessive and unwarranted in this case (which it describes as a "small case").

## III. Analysis

The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA") added subsection (3) to § 1102(b), which states in relevant part:

> A committee appointed under subsection (a) shall—
> (A) provide access to information for creditors who—
> (i) hold claims of the kind represented by that committee; and
> (ii) are not appointed to the committee;
> (B) solicit and receive comments from the creditors described in subparagraph (A); and
> (C) be subject to a court order that compels any additional report or disclosure to be made to the creditors described in subparagraph (A).

This motion relates primarily to the duty of providing information imposed by § 1102(b)(3)(A).

---

[3] S&B maintains that it is operationally solvent, and that its financial difficulties arise from its guarantees that it has given for a substantial part of the debt of Doctors Hospital Century City, another debtor in this court.

The language of BAPCPA does not define the "access" or "information" that § 1102(b)(3) requires. Both the legislative history of §1102(b)(3) and the caselaw thereunder give sparse guidance on how to apply the statutory provisions.

### A. The House Report

The House Report containing the legislative history of § 1102(b)(3) sheds little light on the application of this provision:

> Section 405(b) requires the committee to give creditors having claims of the kind represented by the committee access to information. In addition, the committee must solicit and receive comments from these creditors and, pursuant to court order, make additional reports or disclosures available to them.

H.R. REP. NO. 109-31, at 87 (2005), *reprinted in* 2005 U.S.C.C.A.N. 88, 153.

This statement does not provide any meaningful guidance regarding the type of information to which access must be given or the manner in which it should be communicated. *Accord, In re Refco Inc.*, 336 B.R. 187, 190 n.1 (Bankr. S.D.N.Y. 2006). In addition, the House Report does not indicate whether an official creditors' committee faces any sanctions, other than being subject to a court order compelling the provision of additional information, if the committee does not provide adequate access to relevant information about the case. *Id.*

### B. Caselaw

The only published opinion on the application of § 1102(b)(3) is the *Refco* opinion by Judge Robert Drain, which sets forth a masterful and detailed consideration of this section in light of its history and policy. Judge Drain based his analysis on the similar duties imposed on chapter 7 trustees by § 704(7) and the caselaw thereunder, on similar provisions under the Bankruptcy Act of 1898 and the limited caselaw thereunder, and on the function of a creditors' committee in a chapter 11 bankruptcy case. *See Refco*, 336 B.R. at 192-98.

2

Judge Drain found three propositions relating to a chapter 7 trustee's duties that apply to a committee of creditors under § 1102(b)(3)(A). First, a chapter 7 trustee has a fairly extensive duty under § 704(7) to keep parties in interest informed. *Refco*, 336 B.R. at 193 (citing *Pineiro v. PBGC*, 318 F. Supp. 2d 67, 102 (S.D.N.Y. 2003)). Second, the § 704(7) duty of a chapter 7 trustee is limited and does not include providing privileged information or information that is proprietary or confidential. *Refco*, 336 B.R. at 193. Third, a trustee's right to a protective order is informed by the trustee's fiduciary duties to creditors and the estate. *Id.*

In addition, Judge Drain emphasized the pivotal role of creditors' committees in the bankruptcy process. Their diverse functions, he stated, should be considered in determining creditors' committees' duties under § 1102(b)(3):

> Official committees have diverse duties: they are the primary negotiating bodies for a chapter 11 plan; they also provide supervision of the debtor and execute an oversight function; they may investigate the debtor's assets and affairs; and they may perform such other services as are in the interest of the unsecured creditor body.

*Id.* at 1195 (citing *Johns-Manville Sales Corp. v. Doan (In re Johns-Manville Corp.)*, 26 B.R. 919, 925 (Bankr. S.D.N.Y. 1983)). Many of the functions of a creditors' committee, Judge Drain noted, require the acquisition and preservation of confidential information, including information protected by the attorney-client privilege and counsel's duties of confidentiality. Creditors who are not members of the committee generally should not be provided access to this confidential information, he stated.[4]

The court in *Refco* recognized that the application of § 1102(b)(3)(A) requires a

---

[4] Judge Drain noted that some confidential information may be provided under a suitable confidentiality agreement to certain creditors with a need to receive the information at issue. *See id.* at 198.

balancing of a committee's duties of disclosure to its constituents (usually the unsecured creditors) with the need to protect sensitive information, to preserve the attorney-client privilege and (where applicable) to comply with securities laws. *Id.* at 197. This balance must be struck in each individual case, and varies from one case to another.

In light of these considerations, Judge Drain interpreted § 1102(b)(3)(A) to require that the committee provide access to information through an internet website, and issued an order requiring the committee to establish and maintain a website to provide information to creditors. 336 B.R. at 200. The order listed twelve requirements the committee of creditors must meet on its website.[5] *Id.*

---

[5] The *Refco* court ordered that twelve requirements be met on the website: "(1) general information concerning the chapter 11 cases of Refco Inc. and its affiliated debtors, including case dockets, access to docket filings, and general information concerning significant parties in the cases; (2) monthly Committee written reports summarizing recent proceedings, events and public financial information; (3) highlights of significant events in the cases; (4) a calendar with upcoming significant events; (5) access to the claims docket as and when established by the Debtors or any claim agent retained in the cases; (6) a general overview of the chapter 11 process; (7) press release issued by each of the Committee and the Debtors; (8) a non-public registration form for creditors to request "real-time" case updates via e-mail; (9) a non-public form to submit creditor questions, comments and requests for access to information; (10) responses to creditor questions, comments and requests for access to information provided, that the Committee may privately provide such responses in the exercise of its reasonable discretion, including in the light of the nature of the information request and the creditor's agreements to appropriate confidentiality and trading constraints; (11) answers to frequently asked questions; (12) links to other relevant websites." 336 B.R. at 200.

The order also stated that the creditors' committee must distribute case updates by e-mail for creditors registered for this service on the website, and that the committee must establish and maintain a telephone number and an e-mail address for creditors to submit questions and comments. *Id.*

## C. Application to This Case

The committee in this case contends that this chapter 11 case is relatively small, in comparison to *Refco*. Therefore, relying on a footnote in the *Refco* decision that a website "may not be justified in a smaller case," the committee argues that it should be excused from establishing and maintaining such a website. *See id.* at 198 n.11. However, the court finds that, with more than 220 unsecured creditors and over $36 million in unsecured claims, this a medium sized case, in which establishment of a website should be required.

The committee next argues that the expense to establish and maintain a website is burdensome, and thus unwarranted. The committee's cost estimates range from $500 to $3,000 per month.[6]

The court does not find this expense burdensome in this case. If the cost is $1000 per month, the total cost of maintaining the website for two years (24 months) would be $24,000. The debtor's schedules list more than $25 million in assets. Viewed in this context, the cost of setting up and maintaining the website for the duration of this case is minimal. This relatively insignificant expense should be given little weight when balanced against the creditors' significant need for current information in this fairly large and rapidly moving case.

The court leaves open the question whether all twelve *Refco* requirements must be satisfied in this case, so long as the needs of the non-committee creditors are met. This

---

[6] The court would not be surprised if a website could be established for a lower price. In this technologically advanced age, setting up a website is not a burdensome undertaking. This court does not require a dedicated website; the committee may add its information onto an existing provider's site.

issue is beyond the scope of the motion before the court, and remains to be addressed.

## IV. Conclusion

The court finds that the committee in this case must establish a website to satisfy its duties under § 1102(b)(3)(A) to provide access to information to the unsecured creditors.

Dated: August 18, 2009

Hon. Samuel L. Bufford
United States Bankruptcy Judge

**NOTE TO USERS OF THIS FORM:**
**1)** Attach this form to the last page of a proposed Order or Judgment. Do not file as a separate document.
**2)** The title of the judgment or order and all service information must be filled in by the party lodging the order.
**3)** **Category I.** below: The United States trustee and case trustee (if any) will always be in this category.
**4)** **Category II.** below: List ONLY addresses for debtor (and attorney), movant (or attorney) and person/entity (or attorney) who filed an opposition to the requested relief. DO NOT list an address if person/entity is listed in category I.

# NOTICE OF ENTERED ORDER AND SERVICE LIST

Notice is given by the court that a judgment or order entitled (*specify*) **OPINION REQUIRING CREDITORS' COMMITTEE TO ESTABLISH WEBSITE FOR CREDITOR INFORMATION** was entered on the date indicated as "Entered" on the first page of this judgment or order and will be served in the manner indicated below:

**I. SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s), the foregoing document was served on the following person(s) by the court via NEF and hyperlink to the judgment or order. As of August 17, 2009, the following person(s) are currently on the Electronic Mail Notice List for this bankruptcy case or adversary proceeding to receive NEF transmission at the email address(es) indicated below.

Jeffrey L. Kandel, Esq.          jkandel@pszjlaw.com
Samuel R. Maizel, Esq.          smaizel@pszjlaw.com
Benjamin Seigel, Esq.           bseigel@buchalter.com
Jeffrey K. Garfinkle, Esq.       bkgroup@buchalter.com
United States Trustee           ustpregion16.la.ecf@usdoj.gov
Dare Law, Esq.                  dare.law @usdoj.gov
Russell Clementson, Esq.        russell.clementson@usdoj.gov

☐ Service information continued on attached page

**II. SERVED BY THE COURT VIA U.S. MAIL:** A copy of this notice and a true copy of this judgment or order was sent by United States Mail, first class, postage prepaid, to the following person(s) and/or entity(ies) at the address(es) indicated below:

S&B Surgery Center
 dba S&B Surgery Center II
120 South Spalding Drive
Suite 301
Beverly Hills, California 90212

☐ Service information continued on attached page

**III. TO BE SERVED BY THE LODGING PARTY**: Within 72 hours after receipt of a copy of this judgment or order which bears an "Entered" stamp, the party lodging the judgment or order will serve a complete copy bearing an "Entered" stamp by U.S. Mail, overnight mail, facsimile transmission or email and file a proof of service of the entered order on the following person(s) and/or entity(ies) at the address(es), facsimile transmission number(s), and/or email address(es) indicated below:

☐ Service information continued on attached page

**ADDITIONAL SERVICE INFORMATION** (if needed):

5